Archibald O. Wemple, J.
The petitioner city prays for a final order removing the respondents as tenants and undertenants from certain premises in the City of Schenectady formally known as Urban Redevelopment Project UR NT 3-1 and Urban Renewal Project NT R-7 (NTSS-34). The property is more familiarly described by the street boundaries of Nott Terrace, Chapel Street, Lafayette Street and Liberty Street. The vacant land involved was leased to respondent Lewis Empire Plaza, Inc., under a 99-year agreement commencing June 16,1959 and ending at midnight on June 15, 2058. By the terms of the lease the redeveloper (Lewis Empire Plaza, Inc.) was obligated to submit plans for the project and to construct certain buildings within a specified period. It also provided for payment .of an annual rent of $50,000, and in addition thereto all accruing taxes which were designated in the lease as “ additional rent”. It is an undisputed fact that city and school taxes on the parcel in the amount of $42,992.57 became due and payable in July and October, 1962 and were not paid by the lessee. Notice of such nonpayment and demand for payment of said taxes was given to respondent Lewis by registered letter under date of November 8, 1962 (see petitioner’s Exhibits Nos. 2 and 3) by Peter F. Roan, .City Manager of the City of Schenectady.
In its answer and in its proof, respondent Lewis contended that the petitioner city had refused to allow it to submit plans for *391 approval in accordance with section 502 of article V of the lease agreement claiming that this was a violation of the lease and that during said period of such alleged refusal the rent payable by the,redeveloper was thereby automatically deferred.
Respondents F. F. Fields of Troy, Inc., undertenant, and Ellis P. Eisenstein, doing business as Park-N-Lock, undertenant, each filed answers alleging general denials to the petition but in view of their subordinate positions under the main lease, they did not participate in the trial.
Preceding the commencement of the trial of the issues there were several sharply contested legal skirmishes. First, respondents by special appearance challenged the service of the process and later the sufficiency of the petition. Upon court denial of the first challenge and upon court permission for amendment of the petition as to the second point, it is understood that an appeal to the Appellate Division, Third Department, was taken by respondent Lewis. Then an application to this court for a stay pending appeal was denied. Finally, a motion in Supreme Court for consolidation of another action with this proceeding and a stay of this County Court proceeding was likewise denied by the Honorable Michael, Sweeney.
The gravamen of this proceeding is the nonpayment of the above-described taxes as part of the rental. Section 1410 of the Civil Practice Act specifically provides that a lessee and his assigns or undertenants may be removed (subd. 2), “ Where he holds over, with or without the permission of the landlord after a default in the payment of rent, pursuant to the agreement — under which the demised premises are held, and a demand of the rent has been made, or at least three days’ notice in writing requiring, in the alternative, the payment of the rent, or the possession of the premises, has been served in behalf of the person entitled to the rent upon the person owing it as prescribed in this article ”. Simply stated, the elements of a summary proceeding to recover realty are: (1) ownership of property by petitioner or authority to institute proceedings, (2) relationship of landlord and tenant, (3) description of premises, (4) default in rent payment, and (5) demand for payment of the rent. The first two elements are clearly shown by the testimony and exhibits. The evidence is uncontradicted that the taxes on the premises became due, were billed to Lewis, and were unpaid, by said Lewis as lessee. Such taxes were additional rent. (Lease, § 207.) The notices above referred to as petitioner’s Exhibits No. 2 and No. 3 clearly notify respondent of the amounts of the July and October, 1962 quarterly installments, of the fact that they were past-due and positively demand payment thereof *392 within 30 days after receipt of the notice. Furthermore, the service of the petition and the precept herein upon the respondents was 'additional notice to them of the default in the payment of rent and the intention of the petitioner to terminate the lease. Respondent during the hearing did not deny the nonpayment of the taxes but instead protested lack of co-operation and justification for its failure to comply with the obligation of the lease.
A more difficult problem arises out of the question of whether the rent payments were tolled, that is 'suspended, by reason of the manner in which the proposed new plans were processed by the redeveloper and considered by the petitioner. A great deal of testimony and exhibits were received concerning the various plans and modifications thereof submitted for the project. The original plot plan was dated March 28, 1961 and this was approved by the petitioner in April, 1961. By letter dated October 10, 1961 respondent Lewis was formally notified pursuant to section 1005 of the lease of its ‘ ‘ failure to commence construction within 180 days after final approval of the plans ”. During
1961 modifications were filed and some, if not all of the changes were approved by the petitioner through its Planning Commission or City Council. Then a building permit for the foundation only of the- motel was issued by petitioner on October 21, 1961. In fact, construction of the motel was commenced and proceeded to the point of installation of footings in December, 1961. Then the project was halted and never thereafter resumed. In the month of May, 1962 there was a change of ownership in the stock of the Lewis Empire Plaza, Inc., when Disco Corporation purchased 75% controlling interest. It appears that at least one lease rental was paid by and in the name of Disco. There was no assignment of the lease to Disco and Lewis Empire Plaza, Inc., remained as the corporate party responsible on the lease. Thereafter and in July, 1962 an architect by the name of Tannebaum, admittedly employed by Disco, visited the City of Schenectady and conferred with city .officials concerning further modifications of the plans. Then said Tannebaum on behalf of said Disco but under the written authorisation of Lewis Empire Plaza, Inc., -submitted to the petitioner on or about September 12, 1962 a “Revised Scheme ‘A’ dated August 2, 1962”. This scheme was accompanied by a letter which referred to plot plan revisions of the original plot plan approved in April, 1961 by the Planning Board and City Council. The “ Scheme ” or plot plan projected a mercantile building into the bed of a presently used city street known as Liberty Street. The letter indicated that this phase of the plan was assumed from “ dotted lines ” *393 on the original plan and promise of possession in time for construction. In conclusion, the letter asked for approval as soon as conveniently possible. In reply on ¡September 28, 1962 petitioner stated that the Liberty Street bed area was labeled on the April, 1961 plan as “ proposed future construction” and did not in any way interfere with ‘ ‘ approved plan ’ ’ or construction contemplated thereunder. Upon cross-examination this ■architect witness frankly admitted that the “ Scheme ” he submitted was insufficient in detail for the issuance of a building permit and that it was not even adequate for submission to the Planning Commission or the City Council. It is quite obvious that a permit would not and could not be issued for a building protruding upon a public street until such street was abandoned or relocated. Nor could construction commence until plans were approved and permits obtained. The “ Scheme ” and letter read together point to a substantial variation in the approved plans on file with the petitioner.
Representatives of respondent Lewis attended a -City Council meeting in October, 1962 and entered into general discussions with officials concerning the project. Apparently, no definitive action was taken on the newly offered plans. The petitioner did not approve or reject the proposed schematic drawing. Respondent did display a colored design of the proposed Fields store. But respondent did not proceed to implement its plot plan revision with 1 ‘ plans, specifications or working drawings ’ ’ as required in sections 501 and 502 of the lease. Nor did respondent resume construction on the motel or commence construction for any other portion of the project. It follows that there could be no approval or rejection of nonexistent plans and drawings. It likewise follows that there could be no tolling or postponement for a period of delay which never came to pass. It must be concluded that the final plan of September, 1962 never passed beyond the negotiating stage and was literally never processed “ off the drawing board”.
A lease is a contract which imposes mutual promises and mutual obligations. Failure to perform in any substantial area is a breach of a contract. There was a default in payment of rent herein and this failure of the lessee was sufficient in scope to justify annullment of the lease and termination of the relationship between the parties (Lease, § 1002). The expressions of good faith and good intentions of Mr. Cash as an officer of Disco Corporation, successor in stock interest to Lewis, but in the legal position of Lewis as lessee, falls far short of the performance required under the lease. Actions have a way of revealing the real purpose and intent of a party.
*394 Motion by respondent Lewis to dismiss for failure to prove a cause of action is denied. The lease dated June 16, 1959 and recorded in the Schenectady County Clerk’s office August 25, 1959 in Book 788 of Deeds at page 1 is hereby cancelled. The rights of subtenant J. J. Fields of Troy, Inc., as undertenant and Ellis P. Eisenstein as Park-N-Lock undertenant, both being subordinate to respondent Lewis Empire Plaza, Inc., are likewise cancelled and any lease nr agreement thereunder annulled. Judgment granted giving possession of the demised premises to the petitioner with a warrant for the removal of Lewis Empire Plaza, Inc., as tenant, J. J. Fields of Troy, Inc., and Ellis P. Eisenstein as subtenants granted.